David Axelrod, M.D. Commissioner New York State Department of Health
You have asked whether nursing homes operated by religious organizations, including those receiving medicaid and medicare funds, may grant a preference to members of their religious faith in the admission of patients to their facility. The New York State Human Rights Law and Title VIII of the Federal Civil Rights Act of 1968 generally prohibit discrimination based on religion in the admission of patients to nursing homes. See Human Rights Law, §§ 296.2(a) and 5(a), and42 U.S.C. § 3604. The Human Rights Law, however, contains an exemption which would permit nursing homes operated by religious organizations to use religious criteria in their admissions policies. HRL, § 296.11 states:
 "Nothing contained in this section shall be construed to bar any religious or denominational institution or organization, or any organization operated for charitable or educational purposes, which is operated, supervised or controlled by or in connection with a religious organization, from limiting employment or sales or rental of housing accommodations or admission to or giving preference to persons of the same religion or denomination or from taking such action as is calculated by such organization to promote the religious principles for which it is established or maintained."
Title VIII of the Civil Rights Act of 1968 contains a similar exception to its bar against discriminatory admissions criteria (see42 U.S.C. § 3607).
The receipt of medicaid and medicare funds does not affect a nursing home's ability to exercise a religious preference in admissions because Title VI of the Civil Rights Act of 1964, which prohibits discrimination based on race, color or national origin in programs or activities receiving federal financial assistance, does not likewise prohibit religious discrimination. Also, the receipt of these funds does not convert a nursing home into a "state actor" thereby implicating the restraints of the establishment clause of the First Amendment (see Blum vYaretsky, 457 U.S. 991 [1982]).
The Hill-Burton Act, however, prohibits discrimination based on religion by recipients of funds under the Act, and, accordingly, religion may not be used as an admissions criteria by any homes which have accepted Hill-Burton funds (42 U.S.C. § 291 c[e]; 42 C.F.R. § 124.603). Nor may religion be used as an admissions criterion in a home which could be classified as a public accommodation under the definition contained in Title II of the Civil Rights Act of 1964 (42 U.S.C. § 2000a[b]). Under 42 U.S.C. § 2000a(b), the definition of "public accommodation" is limited, in pertinent part, to establishments "principally engaged in selling food for consumption on the premises", which "serve or offer to serve interstate travellers or a substantial portion of the food which [they] serve . . . has moved in commerce" or whose "discrimination . . . is supported by State action", and to establishments which provide lodging to "transient guests". Facilities which maintain within them establishments that are public accommodations are also covered if the facilities "hold [themselves] out as serving patrons of such covered establishments."
Religious organizations are not exempt from the prohibitions in the Federal and State anti-discrimination laws against discrimination based on race, color or national origin. Nursing homes operated by religious organizations could not, therefore, assert a religious preference in admissions to circumvent those prohibitions. For example, a religious preference which is not actually or uniformly used as a basis for admissions decisions, and which was simply a pretext for racial discrimination, would be illegal. The determination of whether the use of a religious preference by a nursing home constitutes race discrimination, of course, depends on the facts of the particular individual case.